IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHARLOTTE CRAMER,                                      Civ. No. 6:24-cv-01609-AA

        Plaintiff,                                 **OPINION & ORDER**

    vs.

PEACEHEALTH,

        Defendant.

_____

AIKEN, District Judge:

Plaintiff Charlotte Cramer brings five religious discrimination claims against her former employer, Defendant PeaceHealth, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and under ORS 659A.030. *See* Compl., ECF No. 1. Before the Court is Defendant's motion to dismiss four of Plaintiff's Title VII and ORS 659A.030 religious discrimination claims. For the reasons stated below, Defendant's Partial Motion to Dismiss, ECF No.7, is GRANTED. Four of Plaintiff's Title VII and ORS 659A.030 claims are DISMISSED with leave to amend within 30 days consistent with the following Opinion.

## BACKGROUND

In February 2020, the global COVID-19 pandemic hit Oregon and the United States. In August 2021, the FDA approved the first COVID-19 vaccine. On August 5, 2021, the Oregon Health Authority ("OHA") issued a rule requiring all Oregon

Page 1 – OPINION AND ORDER

healthcare providers and staff to be fully vaccinated against COVID-19 (the "OHA Vaccine Mandate") by September 30, 2021, subject to medical or religious exemption as provided under existing federal law. *Former* OAR 333-019-1010 (Aug. 5, 2021).

"On August 3, 2021, [Defendant] adoption of a formal policy that required all of its Healthcare Workers...to be 'Fully Vaccinated' with a COVID-19 vaccine by August 31, 2021 or face discipline up to and including termination[.]" Compl. ¶ 18. At that time, Plaintiff was employed by Defendant as a registered nurse. *Id.* ¶ 6. In August 2021, Plaintiff asked for a religious exemption to the vaccine because her "sincere Christian religious beliefs" prohibited her from receiving the vaccine, which would "damage and violate the purity of her bodily temple" and make her "complicit in the grave evil of abortion." *Id.* ¶¶ 7,8. In August 2021, Defendant granted Plaintiff a religious exemption to the vaccine mandate and placed her on unpaid administrative leave. *Id.* ¶ 9. Plaintiff remained on unpaid administrative leave from "September 1, 2021, through at least April 2023." *Id.* ¶ 9.

## LEGAL STANDARD

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's allegations, a court must accept a plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[A]

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the action's elements. *Id.* at 555 (internal quotation marks and citation omitted).

To survive a motion to dismiss, a pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

## DISCUSSION

Plaintiff brings five religious discrimination employment claims under Title VII and ORS 659A.030: (1) failure to accommodate; (2) disparate treatment; (3) disparate impact; (4) hostile work environment; and (5) retaliation. Compl. ¶¶ 51–97. "A claim for religious discrimination under Title VII can be asserted under several different theories, including disparate treatment and failure to accommodate." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

Plaintiff's state-law claims under ORS 659A.030 are analyzed together with her Title VII claims. *Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007) ("Because ORS 659A.030 is modeled after Title VII, plaintiff's state law discrimination claim can be analyzed together with [their] federal discrimination

claim." (citing *Heller v. EBB Auto Co.,* 8 F.3d 1433, 1437 n.2 (9th Cir. 1993); *Winnett v. City of Portland,* 118 Or. App. 437 (1993)).

I.    *The Claims*

Plaintiff first alleges a failure-to-accommodate claim.  Compl. ¶ 8.  Defendant "does not move to dismiss that claim."  Def. Mot., ECF No. 7., at 1.

Defendant moves to dismiss with prejudice the claims for disparate treatment, disparate impact, hostile work environment, and retaliation. *Id.*

A.    *Disparate Impact*

Plaintiff alleges that "[she] is a member of a protected class on the basis of her devout and sincerely held religious beliefs in the tenets of Christianity."  Compl. ¶ 64. Plaintiff alleges that "similarly situated individuals outside Plaintiff's protected class were treated more favorably than Plaintiff." *Id.* ¶ 67.

Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's . . . religion[.]"  42 U.S.C. § 2000e-2(a)(1).

Title VII bars an "employment practice that causes a disparate impact on the basis of  . . . religion" unless the employer shows that "the challenged practice is job-related . . . and consistent with business necessity."  Title VII 42 U.S.C. § 2000e-2(k)(1)(A)(i).  A disparate impact claim challenges "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002).  To plead a *prima facie* case of disparate impact, a plaintiff must "(1) show a significant disparate impact on a

protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." *Bolden-Hardge v. Office of the Cal. State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023).

To meet the first prong of a disparate impact claim based on religion, Plaintiff must allege facts to show that the employment practice at issue disparately impacts "all or substantially all" individuals of a specific faith or religious subgroup. *See Bolden-Hardge,* 63 F.4th at 1127–28.

Title VII protects individuals of a specific faith or religious subgroup who hold a consistent and defining set of beliefs at odds with an employment requirement. *See, e.g., Bolden-Hardge,* 63 F.4th at 1228 (Because the plaintiff "contends that her religious beliefs are 'consistent with [those] of other Jehovah's Witnesses,' who also believe that their faith forbids them from swearing primary allegiance to any human government[,] . . . we must presume that the oath requirement will impact 'all or substantially all' Jehovah's Witnesses seeking government employment[.]").

Courts have determined that religious individuals who share a specific belief— held by some within and some outside of a specific faith or religious subgroup—do not form a legally cognizable class protected by Title VII. *Cox v. Nw. Reg'l Educ. Serv. Dist.*, Case No. 3:22-cv-01073-HZ (Lead Case), 2024 WL 777598, at *13–14 (D. Or. Feb. 23, 2024) (While "disparate impact claims *can* be made by specific religious faiths or groups[,] . . . parties cannot establish a *prima facie* disparate impact claim by defining the group as comprised of religious individuals holding a particular belief

Page 5 – OPINION AND ORDER

they attribute to their religion even if other members of that individual's faith or religious group believe otherwise.") (citing *Dunbar v. Walt Disney Co.*, No. CV 22-1075-DMG (JCx), 2022 WL 18357775, at *3 (C.D. Cal. July 25, 2022) (emphasis in original) (collecting cases). "Courts generally treat disparate impact claims as those affecting particular groups or faiths, including articulable sub-groups, but not all those who share a single common belief." *Dunbar,* 2022 WL 18357775, at *3.

Plaintiff explicitly claims as her protected class "devout [believers] in the tenets of Christianity." Compl. ¶ 64. That said, the facts in the Complaint explicitly and implicitly reflect Plaintiff's protected class as all those who were "religious objectors" to the Vaccine Mandate. *Id.* ¶ 67-68. Defendant argues that Plaintiff fails the first element because Plaintiff does not identify a legally cognizable disparate impact on a protected class or group. Def. Mot. at 7. Plaintiff responds in her motion that "the Complaint uses the term 'religious objectors' to describe the individuals targeted by Defendant, [and] the Complaint also clarifies from the outset that 'religious objectors' are 'like Plaintiff' and held the same devout Christian religious beliefs." Pl. Resp. To Def. Mot. To Dismiss at 16, E.C.F. 11.

Despite Plaintiff's claim in her motion, that the term "religious objector" should be read as only including those with the same religious beliefs as Plaintiff, that leads to a tortured reading of the Complaint. Nor is the Court helped by Plaintiff's citation to the Complaint to support that point: Plaintiff includes over 30 paragraphs as the source of this "clarity." *Id.* at 16.

Page 6 – OPINION AND ORDER

Among the paragraphs Plaintiff cites for the proposition that religious object should be read as only including Christians is the second paragraph of the Complaint, yet the term "Christian" does not appear until paragraph 7. Instead, in that paragraph Plaintiff says, "PeaceHealth deliberately concocted a policy and plan with a predetermined outcome for *any religious objector* to the COVID 19 vaccine." Compl. ¶ 2 (emphasis added).

The point is made clearer in Paragraph 68, also cited in Plaintiff's response to Defendant's motion: "Individuals with religious exemptions (like Plaintiff) were segregated from those with medical objections in order to provide more favorable treatment[.]" Compl. ¶ 68. The Court declines to read this paragraph as meaning "Only Christians . . . were segregated," as there is no allegation on the record that non-Christian religious objectors were not "segregated" as well. The plain meaning of this sentence hinges on the different treatment of people with religious exemptions and people with medical exemptions. To restrict the former to only Christians would invariably raise the question of how non-Christians with religious exemptions were treated, making the sentence logically incomplete.

Plaintiff does not cite Paragraph 75, but that paragraph makes the Court's point on this issue clearly. In Plaintiff's words, "even if [Defendant's vaccine policy] was facially neutral, it had a disproportionate effect on individuals with religious objections to the COVID-19 vaccine, *including members of the Christian faith." Id.* ¶ 75 (emphasis added). Here, following Plaintiff's claim that she only meant *Christian* religious objectors, the sentence would read: "[the policy] had a disproportionate effect

Page 7 – OPINION AND ORDER

on Christians with religious objections… including members of the Christian faith." Such a reading is plainly absurd on its face.

Plaintiff does not allege that unvaccinated non-Christians were treated better than she was. Nor does Plaintiff claim that no Christian working at Peace Health took the COVID-19 vaccine.

Plaintiff has failed to show a connection between her claimed protected class and the factual allegations.  With the exception of two incidents in the "employee chatroom," *id.* ¶ 31 (discussed below and irrelevant to the analysis of this claim), the Court finds that Plaintiff's factual allegations—in the words of her own Complaint—unambiguously turn on her status as unvaccinated religious objector.

Plaintiff's claim that unvaccinated religious objectors were disparately treated fails because that is not a legally cognizable protected class. Plaintiff fails to state a disparate impact religious discrimination claim under Title VII and state law.

B.    *Disparate Treatment*

A disparate treatment claim requires an allegation that defendant acted with discriminatory intent. *Lavelle-Hayden v. Legacy Health*, No. 3:22-cv-01752-IM, 2024 WL 3822712, at *7 (D. Or. Aug. 14, 2024).  The elements of a *prima facie* disparate treatment claim are, "(1) [plaintiff] is a member of a protected class; (2) [plaintiff] was qualified for [the] position; (3) [plaintiff] experienced an adverse employment action; and (4) similarly situated individuals outside [plaintiff's] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson*, 358 F.3d at 603.

Page 8 – OPINION AND ORDER

In this claim, Plaintiff continues to muddy the waters regarding what precisely is her protected class. She explicitly says that the Vaccine Mandate "had a significant disproportionate adverse effect on individuals with religious objections to the COVID-19 vaccine[.]" Compl. ¶ 75. She does say this group "include[ed] members of the Chrisitan faith" and goes further to say that Defendant "effectively target[ed] Christian beliefs," *Id.* before returning to the allegation that the Vaccine Mandate was a "pretext for discrimination against those with religious objections to the COVID-19 vaccine." *Id.* ¶ 76.

As explained above, "Religious Objectors" is not a protected class, so Plaintiff cannot state a claim for disparate treatment based on that class. *Dunbar,* 2022 WL 18357775, at *3.

The Court turns next to the theory that Plaintiff was treated disparately because she was Christian. Here, Plaintiff meets the first three elements of the claim: (1) Christians are a protected class of which Plaintiff is a member; (2) Plaintiff was a licensed registered nurse with decades of employment as such by Defendant—she was qualified for her position; and (3) Plaintiff adequately alleges an adverse action—she was placed on unpaid leave.

Plaintiff does not meet the fourth element of this claim for the same reasons explained in the previous section: she fails to facts that connect her protected class and the complained-of conduct. As before, Plaintiff's factual allegations turn on the status of unvaccinated religious objector—the unpaid leave, the badge sticker, the lack of promulgation of the religious exemption process, etc.

It seems clear that there were both (1) members of Plaintiff's class who were treated differently than Plaintiff and (2) people outside Plaintiffs class who were treated the same as Plaintiff. Plaintiff makes no claim that a non-Christian religious objector was treated any differently that she was. Instead, she consistently lumps all religious objectors together as the target of Defendant's allegedly discriminatory ire.

Plaintiff fails to state a claim for disparate impact regardless of which protected class she claims. Religious objectors are not a protected class, so that theory fails on the first element of the claim. For the theory that Christians are the protected class, that claim fails on the fourth element because facts in Plaintiff's complaint show that non-Christians religious objectors were impacted in the same way as Plaintiff and fails to account for Christians who did not object to the vaccine on religious grounds.  Plaintiff fails to raise any inference of discriminatory intent

C.    *Hostile Work Environment*

Plaintiff alleges that Defendant created a hostile work environment by "intentionally isolating religious objectors through a 'badge sticker' program . . . and ongoing public announcements . . . intended to subject Plaintiff . . . to bullying, intimidation, scorn, pressure and humiliation by labelling her as immoral, dangerous, not supportive of the common good, on the fringe of society and exposing [others] to physical harm and even death." Compl. ¶ 84.

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to . . . conditions, or privileges of employment[] because of such individual's . . . religion."  42 U.S.C. §§ 2000e-2(a)(1).  To establish a *prima facie*

hostile work environment case, an employee must plausibly allege that (1) they were "subjected to verbal or physical conduct of a [religious] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Mills v. PeaceHealth*, 31 F. Supp. 3d 1099, 1115 (D. Or. 2014) (brackets in *Mills*) (quoting *Vasquez*, 349 F.3d at 642). "The required showing of severity… of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Mattioda v. Nelson*, 98 F.4th 1164, 1175-76 (9th Cir. 2024) (quotation marks and citation omitted). "Supervisor harassment has potentially greater impact than coworker harassment." *Id.* (cleaned up). Of note, "[h]ostile environment claims are different from discrete acts. Their very nature involves repeated conduct . . . Such claims are based on the cumulative effect of the individual acts." *Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

Defendant argues that Plaintiff fails to allege a hostile work environment "because on her religious status" because Plaintiff only alleges "she was harassed because she was 'unvaccinated.'" Def. Mot. at 11.

Plaintiff alleges hostile comments were directed at her and specifically at her religious status. Plaintiff claims that comments were posted in employee chatrooms that specifically targeted Plaintiff and accused her of "not [being] Christian" and "using 'fake' religion to get an exemption" *Id.* ¶ 31.

While that conduct does reach religion rather than vaccination status, Plaintiff does not go into further detail about this conduct. Plaintiff does not identify the

individuals who posted these comments or their status within the organization, nor that these statements were repeated more than once. Those missing details are necessary to demonstrate that the conduct was "severe and pervasive" as opposed to "mere offensive utterances." *Small v. Oregon Heath & Sci. Univ.*, No 3:23-cv-01290-JR, 2024 WL 2176437. (D. Or. Apr. 12, 2024) *5, *report and recommendation adopted in part, rejected in part,* No. 3:23-CV-01290-JR, 2024 WL 2153608 (D. Or. May 14, 2024).

This Court takes Plaintiff's allegations as true, but Plaintiff has not alleged sufficient facts to state a hostile work environment claim.  Plaintiff makes no claim that the alleged discriminatory statements were made by a supervisor, which would speak to the severity of the comments. Plaintiff makes no claim that these two specific instances were ever repeated. In fact, Plaintiff makes these two allegations as part of a longer list of five comments from the employee chatroom. The other three comments—that Plaintiff was "'responsible' for increased COVID rates, is a murderer," [and] "is being selfish"—do not invoke religion, and like most the Complaint's factual allegations, appear to hinge on vaccination status.

Likewise, the rest of Plaintiff's allegations of harassment hinge on vaccination status. Plaintiff claims she was "exposed [ ] to public ridicule, bullying, harassment and intimidation by *vaccinated staff*." *Id.* ¶ 29 (emphasis added). While Plaintiff claims that because she was identifiable as unvaccinated by her lack of badge sticker, this allowed other employees to "directly challenge her religious beliefs at work[,]" *id.* ¶ 30, her cited example of this "direct[] challenge"—the continuation of the above-

cited sentence—is that "doctors pull[ed] nurses into private meetings to scold them about their *vaccination status* and imply [the doctors] would no longer work with [the nurses] unless they became *vaccinated.*" *Id.* (emphasis added). Even though Plaintiff does mention her religious beliefs, aside from the employee chatroom—and in her own words—the conduct she complains of hinges explicitly on vaccination status.

Finally, Plaintiff also seeks to rely on incidents in which she was not involved, but the first element of the claim requires that she was the subject of the verbal or physical conduct.

The Court finds that the two incidents from the employee chatroom are insufficient to allege severity and pervasiveness, and therefor the Plaintiff's fails to state a claim for Hostile Work Environment.

For the reasons above, Plaintiff fails to state a hostile work environment claim under Title VII and state law.

D.    *Retaliation*

Under Title VII, it is unlawful for an employer to discriminate against any employee "because [that employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). "The elements of a *prima facie* retaliation claim are, (1) the employee engaged in a protected activity; (2) [they] suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093–94 (9th Cir. 2008).

Plaintiff asserts that she engaged in protected activities (the first element) when (1) she applied for a religious exemption, (2) she "publicly affirm[ed] to her supervisor that she refused the vaccine for religious reasons and believed that Defendant's attempt to force her to comply without a reasonable accommodation was a violation of her legal rights," (3) complained of religious-based harassment, and (4) she filed complaints with the Oregon Bureau of Labor and Industry ("BOLI") and the federal Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 93. Plaintiff asserts that she suffered several adverse employment actions: that PeaceHealth (1) "refused to give Plaintiff alternative remote work assignments"; (2) "revoked Plaintiff's benefits including health insurance"; (3) "refused to return Plaintiff to work in a timely and reasonable manner"; (4) "refused to consider reasonable accommodation"; and (5) "ultimately terminated Plaintiff's employment." *Id.* ¶ 94.

Defendant argues that Plaintiff has failed to plead the first and third elements of a retaliation claim. Def. Mot. at 14. Defendant asserts that most of Plaintiff's claimed protected activities were not, in fact, protected activities because Plaintiff "does not allege *opposition* to a discriminatory practice, but discrimination itself." *Id.* Defendant acknowledges that filing complaints with BOLI and EEOC are *per se* protected activities but also notes that such filings took place "months after Plaintiff was placed on leave." *Id.*

As to causality, Plaintiff alleges that the asserted adverse employment actions were "[i]n retaliation for opposing Defendant's unlawful practices." Compl. ¶ 94.

Page 14 – OPINION AND ORDER

Defendant argues that Plaintiff fails to plausibly allege a causal link because "PeaceHealth created an accommodation process before [Plaintiff] requested an exception from [PeaceHealth's] vaccination requirement." Def. Mot. at 15.

"The causal link [supporting a retaliatory motive] may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'" *Ray v. Henderson,* 217 F.3d at 1234, 1244 (9th Cir. 2000) (internal quotation marks and citation omitted); *Miller v. Fairchild Ind. Inc.,* 797 F.2d 727, 731 (9th Cir. 1986) (citing cases in which the adverse action occurred after the protected activity).

The Court takes judicial notice that the OHA Vaccine Mandate took effect on August 5, 2021, and was in effect until it was repealed on June 30, 2023. *Former* OAR 333-019-1010. "Courts may take judicial notice of . . . the 'records and reports of administrative bodies.'" *United States v. Ritchie,* 342 F.3d 903, 909 (9th Cir. 2003) (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.,* 209 F.2d 380, 385 (9th Cir. 1953)). Plaintiff alleges that "[o]n August 3, 2021, PeaceHealth announced adoption of a formal policy that required all of its Healthcare Workers . . . to be fully vaccinated, or face discipline up to and including termination." Compl. ¶ 18. Plaintiff applied for a religious exception to the vaccine mandate "before the August 31, 2021, deadline." *Id.* ¶ 36. Defendant granted the requested exemption "shortly thereafter," Compl. ¶ 37, and "August 31, 2021 [was Plaintiff's] last day of work at PeaceHealth before being placed on an unpaid leave of absence." *Id.* ¶ 40. As late as April 2023, PeaceHealth continued to consider Plaintiff an "employee that remained on an

Page 15 – OPINION AND ORDER

unpaid leave of absence." *Id.* ¶ 46. That same month, Plaintiff replied to an email from Defendant requesting "more information about returning to work at PeaceHealth," but Defendant never responded. *Id.*

The sequence of events does not support a causal link.

### 1. Complaint to BOLI and EEOC

The Court begins with the protected activity of filing a complaint with BOLI and the EEOC, which occurred on August 15, 2022. Compl. ¶ 10. This filing was almost one year after the Vaccine Mandate, and well after each adverse action other than termination. The date of the termination is not clear but was on or after late April 2023. The facts do not give rise to an inference that Plaintiff was terminated in whole or in part because of the BOLI and EEOC complaints.

### 2. Complaint of Religious-Based Harassment and Bullying

Whether the act of complaining to an employer about discriminatory comments at work is a protected activity for Title VII retaliation purposes turns on who made the discriminatory comments. *See Trent v. Valley Elec. Ass'n Inc.,* 41 F. 3d 524, 526 (9th Cir. 1994). This rests on the language of the statute which requires "oppos[ing]" an "unlawful employment practice." 42 U.S.C. § 2000e-3(a). The Ninth Circuit has "held that when an employee protests the actions of a supervisor such opposition is a 'protected activity.'" *Trent*, 41 F.3d at 526 (citing *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F. 2d 1008, 1014 (9th Cir. 1983). Conversely, the Ninth Circuit has held that comments by a co-worker are insufficient because "'[t]he opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by

a private individual.'" *Id.* (quoting *Silver v. KCA, Inc.*, 586 F. 2d 138 (9th Cir. 1978)). In *Trent*, the Ninth Circuit looked at an employee's opposition to comments made by an outside contractor, reasoning that the contractor was "hire[d]. . . to train employees, a function often carried out by company supervisors[,]" and that the plaintiff had been required to attend the training session held by the consultant, so summary judgment in favor of the employer at the district court was inappropriate. *Id.* Additionally, "if a person has been subjected to only an isolated incident, a complaint about that incident does not constitute protected activity unless a reasonable person would believe that the isolated incident violated Title VII." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009). "This reasonable person determination requires '[l]ooking at all the circumstances, including the frequency of the discriminatory conduct[ ][and] its severity[.]'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 121 (2001)).

Plaintiff's Complaint is unclear regarding who allegedly engaged in the religious-based harassment and bullying about which Plaintiff complained. Plaintiff is equally unclear about when, how or to whom Plaintiff made the complaint. In fact, only two references to any such complaint being made by Plaintiff are found in her Complaint.

First, "[d]espite *complaining*, PeaceHealth took no action to protect Plaintiff from harassment, bullying and ostracization[.]" Compl. ¶ 31 (emphasis added). The most that can be taken from this passing reference to a hitherto unidentified action is that Plaintiff complained. The Court does not know if the complaint was oral, in

Page 17 – OPINION AND ORDER

writing, in a meeting, in passing in a hallway, or any other facts that may shed light on the issue—such as to whom she complained. Importantly, in the context of the paragraph where the sentence is found, it is not clear that Plaintiff complained of bullying based on religious reasons or bullying that turned on vaccination status.

The second instance is found in the recital of Plaintiff's supposed protected activities in the section on the retaliation claim itself. *Id.* ¶ 93. There, she states that she "complain[ed] that she was being harassed, intimidated and subjected to bullying based upon her religion." Again, Plaintiff includes no information about who did the harassing or bullying, its frequency or severity, nor about the form of the complaint she made, its timing, its recipient, or any other facts that could tie Plaintiff's activity to any adverse employment action in a way sufficient to meet the causation element.

At this stage, the Court takes all factual allegations as true. Thus, the Court accepts the premise that Plaintiff did make a complaint regarding religious harassment. The Court is under no obligation to insert or infer facts not alleged: who's behavior she complained of, to whom she complained, the form of the complaint, or its timing—let alone the contents of the complaint itself. On the facts presented by Plaintiff, the Court cannot find that the bare act of "complaining," without more facts as to what was being complained of, to be a protected activity, nor can the Court, even if it assumes this is a protected activity, find or infer any factual support for the element of causation tying this protected activity to an adverse employment action.

       3. Affirmation with Supervisor

Plaintiff also asserts that she "publicly affirmed to her supervisor and others that she refused the vaccine for religious reasons" and that a lack of "reasonable accommodation was a violation of her legal rights." Compl. ¶ 93.

Like the "complaining" in previous section, Plaintiff does not provide much in the way of facts about this incident. The Court can find only one other instance where Plaintiff mentions this: under the Hostile Work Environment claim, which states "as a result of Defendant's conduct, Plaintiff was forced to explain herself to colleagues and supervisors and openly disclose she had religious based objections to taking the vaccine." *Id.* ¶ 85.

The Complaint is unclear about whether this was a single incident requiring an explanation to her supervisor (per Compl. ¶ 93) or whether Plaintiff had several incidents, thus necessitating the plural "supervisors" (per Compl. ¶ 85). The timing of the incident is not alleged.

Regardless, the bare fact that Plaintiff publicly explained that she refused the vaccine for religious reasons is not a protected activity, as it does not oppose any unlawful employment practice.

On the other hand, she complained that a "lack of reasonable accommodation [is] a violation of her legal rights." While focused on her own rights, the Court will assume that is a protected activity, as it opposes a practice or policy. The Court still does not know when this conversation took place, so inferring a retaliatory motive based on timing is a difficult task.

Page 19 – OPINION AND ORDER

The exact timing is immaterial. None of the alleged adverse actions jibe with this protected activity.

First, Plaintiff's fourth-cited adverse action is "refused to consider reasonable accommodation." The Court cannot accept that the Plaintiff's complaint about a lack of reasonable accommodation led the Defendant to refuse to consider a reasonable accommodation as retaliation—that puts the cart before the horse. In the same vein, Plaintiff's first-cited adverse action—the refusal to give remote work assignments—is just a specific instance of the general adverse action of "lack of reasonable accommodation."

Second, Plaintiff's fifth-cited adverse action—termination—occurred at least one year and likely more from the protected activity, which reasonably must have happened while Plaintiff was still at work. That work ended August 31, 2021, and Plaintiff was terminated on or after April 2023. No causal nexus can be sustained on those facts.

Third, Plaintiff's second-cited adverse action—revocation of Plaintiff's benefits—occurred "by the end of January 2022." Compl. ¶ 41. That is to say, four months after Plaintiff was placed on unpaid leave, and an undetermined time from the alleged protected activity, Plaintiff's employer stopped paying her benefits. Plaintiff does not allege an adequate causal nexus for these two events.

Finally, Plaintiff's third-cited adverse employment action was that Defendant refused to return Plaintiff to work in a timely and reasonable manner. The Court notes that the complaint happened at an undetermined time, and the refusal to

Page 20 – OPINION AND ORDER

return Plaintiff to work in a "timely and reasonable manner" itself does not have a particular date. The causal nexus between the claimed protected activity and this supposed adverse action is too threadbare to sustain.

4. Applying for a Religious Exemption

Finally, Plaintiff claims that Defendant retaliated against her for applying for a religious exemption.

Plaintiff also claims that Defendant had already decided the only accommodation for religious exemptions were an "indefinite unpaid leave of absence" prior to Plaintiff submitting her religious exemption request. Compl. ¶ 37. It is clear that Defendant instituted that exemption process to comply with the OHA Vaccine Mandate.  The sequence of events and the context do not support a retaliatory motive, and Plaintiff offers no other facts that support a retaliatory motive.  *Gallagher v. Hawai'i Symphony Orchestra*, No. 23-00395 JMS-RT, 2024 WL 1331799, at *15–16 (D. Haw. Mar. 27, 2024) (rejecting causation element of retaliation claim because "religion-neutral policy . . . had been established *before* [plaintiff] made a religious accommodation claim") (emphasis in original) (collecting cases).

The other claimed adverse actions fare no better on the causal element. As stated above, "refusing to return Plaintiff to work in a timely and reasonable manner" cannot be separated from the OHA Vaccine Mandate, effective through June 2023. Termination was nearly two-years later, which does not allow for an inference of retaliatory motive. The revocation of benefits in January 2022 after Plaintiff was on

Page 21 – OPINION AND ORDER

unpaid administrative leave for four months is similarly too disconnected to be taken as a result of Plaintiff's application for an exemption.

Because Plaintiff fails to allege sufficient facts to support a causal connection between any protected activity and any adverse action or other facts that support a retaliatory motive, Plaintiff fails to state a claim for retaliation.

## CONCLUSION

For the reasons explained, Defendant's Partial Motion to Dismiss, ECF No. 7, is GRANTED, and the Disparate Treatment, Disparate Impact, Hostile Work Environment, and Retaliation claims are DISMISSED. Plaintiff is given leave to amend her Complaint within 30 days consistent with this Opinion.

It is so ORDERED.

DATED this 10th day of APRIL 2026.


 /s/Ann Aiken
ANN AIKEN
United States District Judge